UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR393 JAR/NCC |
| | ) | |
| DONALD WILHELM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM, AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Pending before the Court is defendant Donald Wilhelm's Motion to Suppress Evidence Seized Pursuant To A Search Warrant.  (Doc. No. 123).  After discovery was provided to defendant Wilhelm, he filed a First Amended Motion To Suppress and Request For a Franks Hearing and a Memorandum of Law.  (Doc. Nos. 163 and 164).  The government has responded. (Doc. Nos. 128 and 168).

Additionally, defendant Wilhelm made an oral motion for disclosure of the confidential informant at the evidentiary hearing held on March 14, 2017.  The government objected to the disclosure after the government's witness Detective David W. Riffer stated that he would not disclose the name without a court order compelling him to do so.  The government also invoked its privilege against making the disclosure and argued that the CS was not material to the events leading to the charges in this case.  The parties have filed supplemental briefs on the motion to compel disclosure of the confidential informant (Doc. Nos. 218-219 and 222-223), and a

transcript of the hearing has been prepared.  (*Transcript of hearing*, Doc. No. 198).  Based on the evidence and testimony adduced, as well as a review of the transcript of the hearing in this matter; and having had an opportunity to evaluate the credibility of the witness and to observe his behavior, the undersigned makes the following finds of fact and conclusions of law.

## FINDINGS OF FACT

On August 5, 2015, Det. David W. Riffer with the North Missouri Drug Task Force applied for a Missouri state warrant to search defendant Donald Wilhelm's residence at the 34000 block[1] of Mesquite Street in LaPlata, Macon County, Missouri.  The rural residence has no physical or postal numerical address assigned to it.  The search warrant, application, affidavit and return are attached to the government's Response.  (Doc. No. 168).  They are incorporated by reference as if fully set out here.  They are the best evidence of their contents.  The summary below is merely for the trial court's convenience.

The affidavit described the residence with particularity.  Little reference is made to Det. Riffer's qualifications or experience in the search warrant affidavit.  He testified at the hearing that he had approximately five years' experience with the task force and 18 years in law enforcement.  He also testified that he has training regarding methamphetamine labs with the Missouri Highway Patrol and the Drug Enforcement Administration.  The affidavit does explain that Det. Riffer knows, based on his training, experience and knowledge, that seizure of computers or other electronic storage devices requires additional searching by qualified computer experts that may take additional time.

Det. Riffer had information from a confidential source (CS) who had known defendant Wilhelm since childhood; knew his residence, and believed him to be a methamphetamine

---

[1] On page 2 of the affidavit, Det. Riffer states that the house is located at the 3400 block of Mesquite Street.

"cooker."  The CS told Det. Riffer that on July 12, 2015, the CS was stuck in the mud approximately 100 feet from defendant Wilhelm's residence at around 8:00 p.m.  The CS called a relative for help, and the CS noticed a game camera nearby pointed in the direction of the CS's vehicle.  As the CS waited, two men in a pickup truck approached and they were extremely agitated.  They yelled at the CS to leave.  The CS recognized one of the men as co-defendant William Martin but could not see the other man who was obscured by the truck's headlights.  The CS also smelled the strong odor of anhydrous ammonia and ether, which are two substances used in the manufacture of methamphetamine and agriculture.  The CS has a background in agriculture and was familiar with those smells.  The CS's relative arrived and helped the CS get out of the mud, but the person he or she identified as Martin and the other man followed the CS down Mesquite Street and continued to shout.  The CS also told Det. Riffer that co-defendant Angelia Jackson and her daughter (between the ages of 8 and 10 years old), lived with defendant Wilhelm at the Mesquite Street property and the CS had recently seen Jackson bathing her daughter in Bear Creek near the house.

Det. Riffer was aware that pseudoephedrine is a precursor for the production of methamphetamine and he conducted computer research to determine whether excessive purchases could be tracked to defendant Wilhelm, and co-defendants Jackson and Martin. Between August 13, 2014 and June 5, 2015, defendant Wilhelm purchased a total of 49.44 grams of pseudoephedrine on twenty one (21) occasions, according to the NPLEX[2] monitoring system. Records of Jackson's purchases of pseudoephedrine showed that she purchased a total of 78.72 grams of pseudoephedrine between September 10, 2010 and July 22, 2015 on thirty six (36) different occasions.  Additionally, Jackson was prohibited from purchasing pseudoephedrine on

---

[2] The National Pseudoephedrine Log Exchange records.

five other occasions because of state law purchase limits.  Det. Riffer was also aware that

Jackson purchased pseudoephedrine two times on August 4, 2015 in Macon, Missouri.  Det.

Riffer was aware from his training and experience that evidence of excessive purchases of

pseudoephedrine is an indicator of possible methamphetamine production.  Martin also

purchased pseudoephedrine.

The affidavit noted that defendant Wilhelm has a criminal history that includes a felony

conviction for drug possession.  And he has arrests for assault and a "caution" indicator for being

armed in the past.  Jackson is a convicted felon and Martin, who was said in the affidavit to also

reside with defendant Wilhelm, has a conviction for illegally carrying a firearm.

The affidavit does not mention any other track record of information supplied by the CS.[3]

Based on the above, Det. Riffer believed there was probable cause for a search warrant of

the Mesquite Street residence and he presented the application and affidavit to a state court judge

for property, article, material or substance that constitutes evidence of the commission of a

crime; and property for which possession is an offense under the laws of Missouri.  The search

warrant was signed on August 4, 2015 at 5:26 p.m.[4]

---

[3] Det. Riffer did conduct additional investigation that he did not include in the affidavit.  He
testified that he drove with the CS past the residence and the CS recalled that Jackson had soap
when she bathed her daughter in the creek.  He also communicated with the Macon County
Sheriff's Office regarding defendant Wilhelm's suspected methamphetamine cooking that the
Sheriff's office was investigating for several years leading up to the search warrant.  Because
Det. Riffer did not include this information in the search warrant affidavit, the undersigned has
not considered this information in evaluating the probable cause for the search warrant to issue.

[4] Defendant has proffered that after indictment, co-defendant Martin provided information to the
government and defendant Wilhelm that he argued established that he was not present in
Missouri on July 12, 2015 when the CS claimed to have seen him.  Upon further post-indictment
investigation, the CS was questioned about his prior identification of co-defendant Martin that
was included in the search warrant affidavit.  The CS has since told the government that he
suspected that Martin was present at Mesquite Street on July 12, 2015 but that he may have
misspoken on the matter.  The government has provided notes prepared by the CS to defendant
Wilhelm as part of its disclosures in this case. The notes are not before the Court.

4

## DISCUSSION

### Defendant's First Amended Motion To Suppress and Request For A Franks Hearing (Doc. No. 163)

#### Probable Cause and challenge under *Franks v. Delaware*

Defendant Wilhelm asserts that the search warrant contains intentionally false and misleading statements and Det. Riffer relied solely on the CS who lacked credibility, and whose information was uncorroborated and about which an important detail he later recanted.  In addition, Wilhelm contends that the CS had an undisclosed pending criminal charge on August 4, 2015 for driving while intoxicated, and that the charge was dismissed shortly after the indictment in this case.  He argues that this omission and other misstatements should result in a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and a finding that the search warrant lacked probable cause.

Based upon the factual findings above, however, the undersigned concludes that sufficient probable cause existed for the issuing judge to sign a warrant to search the Mesquite Street residence.  The CS information was corroborated by the excessive pseudoephedrine purchases made by defendant Wilhelm and co-defendant Jackson.  Wilhelm has a criminal history for drug possession.  Det. Riffer was familiar with the role of pseudoephedrine as a precursor in the manufacture of methamphetamine.  Additionally, at the time the CS thought he saw co-defendant Martin outside Wilhelm's residence, the affiant believed Martin to be a co-habitant of Wilhelm and their combined totals of pseudoephedrine purchased supported a probable cause finding regarding drug manufacturing at the residence.  Moreover, defendant Wilhelm's arguments do not meet the threshold of a preliminary showing for a *Franks* hearing.

The Supreme Court has defined probable cause to search as "a fair probability that the contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S.

213, 238 (1983).  To be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched.  *Johnson v. United States*, 333 U.S. 10 (1948); *Warden v. Hayden*, 387 U.S. 294 (1967).  *See also*, Fed. R. Crim. P. 41.  Stated another way:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' "probable cause to issue the warrant has been established."

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)).

Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *See Illinois v. Gates*, 462 U.S. at 232.  Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."  *Id.*  Probable cause may be based on the totality of the circumstances present and, as a result, affidavits should not be read in a grudging, hyper-technical fashion.  *See United States v. Ventresca*, 380 U.S. 102, 109 (1965).  Probable cause may be established in a variety of ways, including reliance on hearsay statements from reliable persons; hearsay statements from confidential informants corroborated by independent investigation; or on the observations of trained law enforcement officers.  *See Gates*, 462 U.S. at 245; *Draper v. United States*, 358 U.S. 307, 313 (1959); and *McDonald v. United States*, 335 U.S. 451, 454 (1948). Information from a proven reliable informant is by itself sufficient to support a finding of probable cause to search.  *United States v. Wright*, 145 F.3d 972, 974-75 (8th Cir. 1998).  When a confidential informant is used in support of a search warrant, the issuing judge considers both

the informant's reliability and knowledge base. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010)(citations omitted). "Where a previously unknown informant provides information, the informant's lack of track record requires some independent verification to establish the reliability of the information." *United States v. Taylor*, 106 F.3d 801, 803 (8th Cir. 1997). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference and the role of the reviewing court is "simply to ensure [the issuing judge] had a substantial basis" for the finding. *Illinois v. Gates*, 462 U.S. at 236.

Additionally, a search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit that contained false statements, and such statements were made knowingly and intentionally or with reckless disregard for the truth. *United States v. Box*, 193 F.3d 1032, 1034 (8th Cir. 1999). A defendant's entitlement to a *Franks* hearing requires him or her to make a substantial preliminary showing by a preponderance of the evidence that a material statement in a search warrant affidavit was made by the affiant with reckless disregard for whether the statement was true or was a deliberate falsehood. *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002); *United States v. Anderson*, 243 F.3d 478, 482 (8th Cir. 2001). Mere negligence or innocent mistake is insufficient to void a search warrant. *Franks*, *supra*, 438 U.S. at 171. *See, also, United States v. Gonzalez*, 781 F.3d 422, 431 (8th Cir. 2015)(denying defendant's claims that omissions from the search warrant affidavit were material where defendant failed to show that the omitted material was "clearly critical" to the probable cause determination). The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, viewing all of the evidence, the affiant must have entertained serious doubts as to the accuracy of the information he or she reported. *See*, *e.g.*, *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995). If the defendant makes

7

such a showing, then the court must consider whether the information in the affidavit, absent the false material, is sufficient to establish probable cause.

In this case, regardless of whether defendant Wilhelm met his burden of the substantial showing required by *Franks*, he had the opportunity to challenge the search warrant at the pretrial hearing.  Defendant cross examined Det. Riffer and asked questions outside the four corners of the affidavit in an effort to show aspects of it were false.  *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010)("The Government called and the Defense cross examined Officer Powell and another member of the task force and Defendant was given an opportunity to call witnesses at the hearing.").

### A. Confidential Source Information

Wilhelm argues that the search warrant fails to meet the probable cause standard set forth in the Fourth Amendment because the CS was not used previously or, if the CS was used by law enforcement in the past, there lacked a statement stating so.  He also argues that the CS had an undisclosed criminal charge that makes him unreliable, and the CS did not see William Martin at defendant Wilhelm's property on July 12, 2015.

The Eighth Circuit has held that there is no requirement that the CS be past proven reliable if the information that was "based on first-hand observations, not merely rumor or innuendo."  *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).  *See also United States v. Solomon*, 432 F.3d 824, 827–28 (8th Cir. 2005) (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000) ("a known informant ... can be held responsible if [his] allegations turn out to be fabricated") and *Gabrio*, 295 F.3d at 883 (noting that in-person statements allow an affiant to assess an informant's veracity)); *see also McAtee*, 481 F.3d at 1103 (opining that a known informant is more reliable than an anonymous tipster); *United States v. Robertson*, 39 F.3d 891,

893 (8th Cir. 1994) (reasoning that in-person statements allow affiant to assess informant's veracity).  Regardless of his or her motives and possible criminal history, the CS had known defendant Wilhelm since childhood and smelled chemicals associated with methamphetamine production coming from his property and reported this information to the police.  *See United States v. Walsh*, 299 F.3d 729, 734 (8th Cir. 2002)(recognizing that a warrantless search based in part on plain smell of ether was based on probable cause at suspected residence with a methamphetamine lab)*; United States v. McAtee*, 481 F.3d 1099, 1103 (8th Cir. 2007); *Solomon*, 432 F.3d at 827; *Gabrio*, 295 F.3d at 883; *Robertson*, 39 F.3d at 893 (quoting *Gates*, 462 U.S. at 234, 103 S.Ct. 2317 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.")).

In this case, the issuing judge concluded under the totality of the circumstances that the CS had a sufficient basis of knowledge given his or her long association with defendant Wilhelm, observations of a game camera directed at the street in front of the residence, and the strong smell of anhydrous ammonia combined with ether when the CS was about 100 feet from Wilhelm's residence.  The circumstances surrounding the manner in which the CS was confronted by the two men was another set of factors upon which the issuing judge could weigh in favor of a probable cause finding.  The men offered no help to the CS or the stranded vehicle but rather shouted at and followed the CS away from the residence.  The two men's aggressive actions could be viewed as attempting to hide criminal activity.

Second, the CS information was corroborated by the pseudoephedrine logs which detailed an excessive purchase history for defendant Wilhelm and two other adults thought to reside at his home, even if the address information for the co-defendants did not match

9

Defendant Wilhelm's address. *Taylor*, 106 F.3d 801 at 803. The NPLEX information is not challenged by defendant Wilhelm as erroneous or that it lacks a sufficient indicia of reliability when used by law enforcement to investigate excessive pseudoephedrine purchases. *Mctee*, 481 F.3d 1099, 1103 (noting that police observation of a suspect who made a recent large purchase of pseudoephedrine and other statements against penal interest suggested "the question was not whether a crime was being committed, but only where and by whom.")(quotation omitted). Defendant has failed to show that the affiant "had obvious reasons to doubt the accuracy of the information" from the NPLEX system. *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010).

Moreover, Wilhelm's drug history was probative regardless of whether there was an express discussion in the affidavit about the disposition of his prior case. Such omitted details cannot be said to be clearly critical to the probable cause determination for the Mesquite Street residence. *Gonzalez*, 781 F.3d 422, 431.

Finally, there is no requirement that the Mesquite Street address be co-defendant Jackson's official address for the issuing judge to have determined based on the totality of the circumstances that he or she was a co-habitant or co-conspirator of defendant Wilhelm. *See United States v. Stevens*, 530 F.3d 714, 719 (8th Cir. 2008)(reasoning that probable cause for a search warrant was supported by the affiant's confirmation of defendant's criminal history and determination that the CS's allegations were similar to defendant's prior narcotics-related charges). The corroboration of even innocent, minor details can support a finding of probable cause. *See Solomon*, 432 F.3d at 828 (discussing *United States v. Murphy*, 69 F.3d 237, 240 (8th Cir. 1995) (noting that search warrant affiant confirmed facts of address and parole release records for defendant).

Importantly, in this case, defendant Wilhelm does not claim that the affiant lacked a basis for stating that the target address at Mesquite Street is where he lived, and where he would likely have possessed excessive quantities of pseudoephedrine in connection with criminal activity. He argues instead that the affiant erred by referring to co-defendants as cohabitants based on the uncorroborated, unreliable CS. This argument fails to consider that the CS visited defendant Wilhelm recently and knew that it was defendant Wilhelm's residence. The affidavit described accurately the property where evidence of the crime was reasonably likely to be found. The CS identified Martin as being in the truck that chased the CS away on July 12, 2015, and the affiant did not have reason to know or believe that the CS's identification might have been in error.[5] Defendant also fails to consider that the CS recognized Jackson and observed the domestic act of bathing her 8-to-10 year-old daughter in a nearby creek. Under the totality of the circumstances, the issuing judge considered these facts and they lend support for the conclusion that Jackson frequented the residence, and their combined purchases of pseudoephedrine were excessive for one household.

Moreover, defendant Wilhelm's assertion that the affidavit does not include dates, other than July 12, 2015, upon which the CS's "recent" observations about defendant's residence and residents does not ruin the probable cause. The undersigned concludes that such information is ultimately relevant to the consideration of whether the CS information was fresh or stale at the time the search warrant issued. And the lack of exact dates should not by itself trigger a *Franks* review. "'[T]here is no bright-line test for determining when information is stale . . . and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.'" *United States v. Tyler*,

---

[5] It is not know from the record in this case whether the government now agrees that co-defendant Martin was misidentified by the CS.

238 F.3d 1036, 1039 (8th Cir. 2001) (quoting *Koelling*, 992 F.2d at 822).  Moreover, "[i]n investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'"  *Smith*, 266 F.3d at 905 (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)) (noting three-month old information in affidavit was not stale).  In *United States v. Palega*, 556 F.3d 709 (8th Cir. 2009), the Eighth Circuit rejected a search-warrant staleness argument in a drug-distribution case based on source information as old as two years and as fresh as five days.  *Id.* at 714-15.  Given that the search warrant issued on August 4, 2015 after the NPLEX information confirmed defendant Wilhelm's most recent purchase to be made June 5, 2015 and Jackson's to be made on August 4, 2015, the CS's observations, including the plain smell of methamphetamine-making chemicals satisfied the requirement that the information not be stale at the time the search warrant issued.  And there is no evidence that the omission of specific recent dates was intended to mislead the issuing judge or that the omission of this information was clearly critical to a finding of probable cause.  *Gonzalez*, 781 F.3d 422 at 431.  This point should be denied.

Although the affidavit does not state whether Jackson's address was independently corroborated by Det. Riffer, the fact that Jackson's home address found on the pseudoephedrine logs is different than defendant Wilhelm's address on Mesquite Street does not equate to a knowing falsehood.  And the omission of this detail was not clearly critical to the probable cause finding because the CS recognized Jackson and saw her bathing her school-aged daughter outdoors in creek water near the trailer at Mesquite Street recent to the other events.  Under the totality of the circumstances, the issuing judge could reasonably rely on the CS's observation of Jackson's domestic act at Mesquite Street as suggesting a residential connection to defendant

Wilhelm by her presence at Mesquite Street.  Finally, the information about Jackson's excessive pseudoephedrine purchases and those of Martin added to the probable cause but it was not the sole basis for the search warrant to issue because the affidavit discussed Wilhelm's excessive purchases as well.  *United States v. Mshihiri*, 816 F.3d 997, 1003 (8th Cir. 2016).

With respect to the core of the *Franks* challenge, defendant Wilhelm argues that the affiant overly relied on a CS who provided misinformation about Jackson's connection to the Wilhelm's house and Martin's presence there on July 12, 2015.  He also claims that the search warrant omitted the material information about the CS's pending criminal charge.

The record does not support defendant Wilhelm's contention that the affiant knew that co-defendant Jackson had another address or that he misled the issuing judge about this.  On cross examination, Det. Riffer testified that he had never seen the paper versions of Jackson's pseudoephedrine logs that were compiled by the government and disclosed after indictment until the hearing in this case on March 14, 2017.  He did not recall attempting to run her driving record through the Missouri Department of Revenue.  Det. Riffer explained that he requested an alert through the NPLEX system for purchases of pseudoephedrine made by co-defendant Jackson after he communicated with the Macon County Sheriff's Office about her suspected involvement in methamphetamine production.   He explained that this "smurfing" arrangement typically occurs when a methamphetamine cook has other people buy pseudoephedrine pills and deliver those pills to the cook to avoid the state law purchase limits per individual customer.  As a result, the NPLEX system alerted Det. Riffer about Jackson's purchases by cellular telephone text message on August 4, 2015.  There is no evidence that Det. Riffer intentionally misled the issuing judge about the address information of which he was not aware.

13

Moreover, defendant Wilhelm's residence was the target of the search warrant and his pseudoephedrine purchases over a ten-month period were excessive. The CS identified Wilhelm as a methamphetamine cook and it was his property that had a game camera pointed at the street. His excessive purchases of pseudoephedrine, along with Jackson's, and the CS report of ether and anhydrous ammonia smells established a reasonable likelihood of criminal activity at Mesquite Street when the judge issued the search warrant.

Additionally, defendant Wilhelm cannot show that inclusion of the information about co-defendant Martin's presence at Wilhelm's house on July 12, 2015 was deliberately false or made with reckless disregard for the truth. Det. Riffer explained at the hearing that he obtained information through the CS or by way of the Macon County Sheriff's Office but he did not document the source, nor did he prepare a report at the time. He acknowledged that he should have documented his sources. On this record, Det. Riffer's actions were mildly negligent at worse. Investigators were focused on obtaining a search warrant on the belief that defendant Wilhelm planned to cook methamphetamine at his house contemporaneously with Jackson's pseudoephedrine purchases on August 4, 2015. They moved quickly to secure that search warrant. This does not merit a *Franks* review. *See also United States v. Finley*, 612 F.3d 998, 1002-03 (8th Cir. 2010). Negligence and innocent mistake are insufficient to prove reckless disregard for the truth or intentional falsehood. *Id.* There is no evidence that Det. Riffer did knowingly and intentionally or with reckless disregard for the truth entertain "serious doubts as to the truth of the statements or had obvious reasons to doubt the accuracy of the information reported." *United States v. McIntyre*, 646 F.3d 1107, 1113-14 (8th Cir. 2011) (quotation omitted).

14

Finally, Defendant Wilhelm alleges the search warrant is fatally infirm because it does not discuss that a dismissal of the CS's pending charges for driving under the influence occurred in exchange for cooperation in this case. The omission in a search warrant affidavit concerning promises of leniency does not necessitate a *Franks* hearing. *Hunter v. Namanny*, 219 F.3d 825, 830 (8th Cir. 2000). The Eighth Circuit has ruled that the lack of such information in an affidavit is not per se misleading. *See United States v. Williams*, 477 F.3d 554, 558-59 (8th Cir. 2007). At most, on this record, any error was an innocent or negligent mistake and not the product of deliberate or reckless disregard for the truth. *Franks*, *supra*. These points should be denied.

### B. *Good Faith Reliance*

Det. Riffer could also rely on the issuance of the search warrant as valid. An affiant can rely on the good faith issuance of a search where they are technically sufficient. *See United States v. Lucca*, 377 F.3d 927 (8th Cir. 2004); *citing United States v. Leon*, 468 U.S. 897, 921–23 (1984).

In *Leon*, the Supreme Court considered whether the exclusionary rule ought to apply in the case where the lower courts concluded that the subject search warrant was not supported by probable cause in the attached affidavit. The Supreme Court weighed the question of whether the issuing judge acted with detached and neutral scrutiny and decided if so, then the judge's probable cause ruling should be given deference. 468 U.S. at 913-14. Here, defendant Wilhelm has not shown that the issuing judge acted other than in a detached and neutral manner. It does not follow from the totality of the circumstances of this case that the issuing judge acted other than having exercised "the detached scrutiny of a neutral magistrate." *Id.* at 913. Finally, there is no evidence before this court that indicates that the issuing judge acted as a "rubber stamp for the police." *Id.* at 914.

Next, the Supreme Court considered that deference to the issuing judge may diminish in light of the type of knowing or reckless falsity in the affidavit that was the subject of *Franks*, 438 U.S. 154 at 169.  The record does not support a knowing or reckless falsity.  *Finley*, 612 F.3d at 1002-03.

Further, the Supreme Court considered that applying the exclusionary rule,

> is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests.

*Leon*, 468 U.S. at 917.

Additionally, the Supreme Court considered whether the form of the issued warrant was technically sufficient.  *Id.* at 921.  There is no evidence here to the contrary, even with the possible mistaken reference to co-defendant Martin's presence at the residence and the other information he argues was omitted.  Further, the Eighth Circuit has stated

> We have recognized four circumstances that preclude a finding of good faith: "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid."

*Id.* (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).  In evaluating a search under *Leon*, we "must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the

16

warrant." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). The warrant issued here meets the requisite criteria.

In evaluating a search under *Leon*, we "must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). Because the affiant had probable cause and investigators relied in good faith on the search warrant's issuance, the evidence was seized and searched lawfully.

**Motion For Disclosure of Confidential Informant (Doc. No. 218)**

During cross examination at the hearing, defense counsel asked Det. Riffer to reveal the name of his CS. The government objected and the court sustained the government's objection until all the testimony could be heard, and further ruled that the matter could be reopened if the evidence supported defendant Wilhelm's motion. Because the court finds below that defendant Wilhelm has not met his burden of demonstrating a need for disclosure of this sensitive information, his request for further review of this matter is denied.

The law is well settled that the government has a privilege to withhold the identity of its informants. *McCray v. Illinois*, 386 U.S. 300, 311 (1967). "The defendant bears the burden of demonstrating the need for disclosure and the court must weigh the defendant's right to information against the government's privilege to withhold the identity of its confidential informants." *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). Under *Rovario*, 353 U.S. 53 at 64-65, a defendant may be entitled to know an informant's identity in certain circumstances. In making its decision, the court must balance the defendant's needs against the public's strong interest in preserving the confidences of individuals who report crimes. *Id.* at 59-62. The defendant's need for disclosure, however, might be established by showing that the

informant is a material witness to the events to be proved at trial or that the testimony is vital to his defense. *Rovario*, 353 U.S. at 64-65; *United States v. Crenshaw*, 359 F.3d 977, 1004-05 (8th Cir. 2004). "[I]n order to override the government's privilege of nondisclosure, defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Harrington*, 951 F.2d at 877. Rather, "[t]here must be some showing that the disclosure is vital to a fair trial." *United States v. Curtis*, 965 F.2d 610, 614 (8th Cir. 1992). It is an abuse of the trial court's discretion to order disclosure "absent a showing of materiality." *United States v. Grisham*, 748 F.2d 460, 463 (8th Cir. 1984).

The government characterizes the CS's role in this case as akin to a tipster—someone who simply gave leads about defendant Wilhelm and others. The role of the CS in this case appears to be limited to background information, some of which was corroborated by Det. Riffer and other investigators. There is no evidence that the CS was involved in the alleged crimes or that he or she operated at the behest of the police, even though the CS kept notes relevant to the investigation. The court finds that the CS is a tipster in the course of these events. "In cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991); *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987).

Courts will deny a defendant's request to know the identity of a tipster who is a person not vital to a fair trial "because the informant's testimony would not further any legitimate interests of" the defendant. *Harrington*, 951 F.2d at 878. "Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001). Here, the CS

18

disclosed his or her encounter out front of defendant Wilhelm's property on July 12, 2015 with two men who confronted the CS and chased him or her away.  The CS smelled chemicals associated with the manufacture of methamphetamine.  The CS reported this information to the police, along with other details.

The Court finds that the CS's identity should not be disclosed.  The CS was not present for any of the charged conduct in this case.  *Barnes v. Dormire*, 251 F.3d 767 (8th Cir. 2001)(holding that disclosure was not required when a confidential informant was present but acted merely as a facilitator for the transaction).  "[M]ere speculation that the informant's testimony will be material to the determination of this case," is not enough to override the government's privilege.  *United States v. Hollis*, 245 F.3d 671, 675 (8th Cir. 2001)(citation omitted).  Further, the disclosure of the CS's notes to defendant Wilhelm does not necessarily result in a waiver of this privilege.  *See, e.g., United States v. Sierra-Villegas*, 774 F.3d 1093, 1098 (6th Cir. 2014)("The government does not necessarily waive the informant privilege whenever the identity of the informant is known by the defendant, or even when the government has revealed it to the defendant.  Such situations are best understood as partial disclosure, and some of the government's interest in protecting an informant's identity may remain.").

Finally, defendant Wilhelm seeks information about the CS should the government decide to offer that testimony at trial.  To the extent that the government intends to call the CS as a witness at trial and defendant Wilhelm is seeking disclosures of certain information to which he is entitled under the U.S. Constitution, case law and the Federal Rules of Criminal Procedure, defendant Wilhelm's motion is granted in part.  The government shall provide to defendant the following material or information, if any exists, as to any person who it calls as a witness at trial in this case including:

19

1. The prior criminal history of convictions of the witness;

2. Any consideration offered or given to the witness in exchange for his/her testimony and/or cooperation in the investigation of the case; and

3. Any statement of the witness which relates to the subject matter about which he/she is to testify (Jencks Act Material).

In addition, the government is required to provide to the defendant Wilhelm any other evidence in its possession which is favorable to the defendant and which is material to the guilt or innocence of the defendant or to punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). This includes evidence which may be used to impeach the testimony of government witnesses. *United States v. Bagley*, 473 U.S. 667 (1985). To the extent that defendant's motion requests disclosure of such evidence, it should be granted. In all other respects, it should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Donald Wilhelm's Motion to Suppress Evidence Seized Pursuant to a Search Warrant (Doc. No. 123); and First Amended Motion to Suppress and Request for Franks Hearing (Doc. No. 163) **be denied.**

**IT IS FURTHER RECOMMENDED** that Defendant Donald Wilhelm's Motion To Disclose Confidential Informant (Doc. No. 218) **be granted in part only as to disclosures under *Brady*, *Bagley*, Jencks Act and Rule 16 materials and denied in all other respects.**

**IT IS HEREBY ORDERED** that this cause is set for trial before United States District Judge John A. Ross on **Monday, August 21, 2017, at 9:00 a.m.**.

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained.  Failure to timely file objections may result in the waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).


/s/ Noelle C. Collins
United States Magistrate Judge


Dated this 20th day of June, 2017.